# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DAMPIER ELECTRIC, INC. and MARCUS DAMPIER,<br><br>Defendants. | Case No. 1:19-cv-01419-DAD-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT BE GRANTED**<br><br>(Doc. 13)<br><br>**OBJECTIONS DUE: 14 DAYS** |

## I. INTRODUCTION

On October 8, 2019, the United States of America (the "Government") filed this action against Dampier Electric, Inc. ("Dampier Electric") and Marcus Dampier ("Dampier") (collectively, "Defendants") seeking entry of a permanent injunction under 26 U.S.C. § 7402(a). (Doc. 1.) The Government served the summons and complaint on Dampier Electric on October 17, 2019. (Doc. 5.) It served Mr. Dampier on October 26, 2019. (Doc. 4.)

On November 27, 2019, the Clerk of Court entered Defendants' defaults as to the complaint. (Docs. 10 & 11.) On January 30, 2020, the Government filed the instant motion for entry of default

1 judgment against Defendants (the "Motion"). (Doc. 13.) No opposition to the Motion has been
2 filed. (*See* Docket.)

3 After having reviewed the papers and supporting material, the unopposed Motion was
4 deemed suitable for decision without oral argument pursuant to Local Rule 230(g), and the Court
5 vacated the hearing set for March 4, 2020. (Doc. 15.) For the reasons set forth below, the
6 undersigned RECOMMENDS that the Motion be GRANTED.

## II. FACTUAL BACKGROUND

8 Dampier Electric, an electrical contracting company, is a suspended California Subchapter
9 S Corporation that was registered on July 22, 2008. (Doc. 1 ("Compl.") ¶ 4.) Dampier owns and
10 operates Dampier Electric. (*Id*. ¶ 3.)

11 The Government alleges that, as an employer, Dampier Electric was required by law to (1)
12 withhold federal income and Federal Insurance Contributions Act ("FICA") taxes for its employees,
13 and to pay the amounts withheld to the IRS together with the employer's FICA and Federal
14 Unemployment Tax Act ("FUTA") taxes under 26 U.S.C. §§ 3102, 3111, 3301, and 3402; (2) make
15 periodic deposits of withheld FICA taxes in an appropriate federal depository bank in accordance
16 with federal deposit regulations set forth in 26 U.S.C. § 6302 and 26 C.F.R. § 31.6302–1; and (3)
17 file Employer's Quarterly Federal Tax Returns (IRS Form 941) and annual FUTA Tax Returns (IRS
18 Form 940) (collectively, "employment tax returns") with the IRS under 26 U.S.C. §§ 6011, 6071
19 and 26 C.F.R. §§ 31.6011(a)-1, 31.6011(a)-3, 31.6011(a)-4, and 31.6071(a)–1. (Compl. ¶¶ 5–10.)
20 Dampier Electric was purportedly required to file the returns and pay taxes without notice from or
21 demand by the IRS. (*Id*. ¶ 11.)

22 According to the complaint, Dampier Electric purportedly failed to comply with its tax
23 obligations despite the fact that the IRS made numerous efforts to secure its compliance. (Compl.
24 ¶¶ 12–25.) Dampier Electric has allegedly incurred significant employment tax liabilities, has
25 consistently failed to make complete federal tax deposits, and has failed to file timely tax returns.
26 (Compl. ¶¶ 13–17.) As a result of these failures, the Government alleges that Dampier Electric has
27 incurred Form 941 (FICA) employment tax liabilities totaling $798,995.52 for tax periods from
28 September 30, 2009 to December 31, 2016. (*Id*. ¶ 26.) It has also purportedly incurred Form 940

1 (FUTA) unemployment tax liabilities totaling $4,687.95 for the 2011, 2012, 2014, and 2016 tax years. (*Id*.)

The Government further alleges that Dampier Electric's and Dampier's noncompliance with their tax obligations has continued. (Compl. ¶¶ 13, 15, 17.) It asserts that although Dampier Electric remains in operation, it has failed to file any Form 941 returns for the tax periods between March 30, 2017, and June 30, 2019, or any Form 940 returns for the 2017 and 2018 tax years. (*Id*. ¶¶ 15, 17, 18.) Dampier has also not regularly filed individual tax returns (IRS Form 1040). (*Id*. ¶ 21.)

The complaint pleads that the IRS has made numerous attempts to bring Dampier Electric into compliance with its tax obligations. (Compl. ¶ 24.) The IRS has purportedly undertaken unsuccessful collection actions against Dampier Electric since 2014. (*Id*.) Following the unsuccessful compliance efforts, the IRS purportedly sent Dampier Electric a letter on June 13, 2017, giving it notice of its obligations to make federal tax payments and file timely tax returns, including Form 941 and Form 940. (*Id*. ¶ 25.) A duly authorized delegate of the Secretary of Treasury also sent a notice of demand for payment to Dampier Electric for FICA taxes, FUTA taxes, penalties, interest and other statutory additions. (*Id*. ¶ 26.) Since sending these notices, the IRS has purportedly been unable to collect Dampier Electric's outstanding employment tax liabilities. (*Id*. ¶ 24.) Moreover, Dampier Electric allegedly continues to operate and incur employment taxes, which it has failed to pay. (*Id*. ¶¶ 18, 31.) Based on these allegations, the Government seeks a permanent injunction under 26 U.S.C. § 7402(a) against the Defendants. (*Id*. ¶¶ 27–35.)

## III. DISCUSSION

### A. Legal Standard Governing Motions for Entry of Default Judgment

A court may enter judgment against parties whose default has been taken pursuant to Rule 55(b). *See PepsiCo, Inc. v. California Security Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002); *Kloepping v. Fireman's Fund*, No. C 94–2684 TEH, 1996 WL 75314, at *2 (N.D. Cal. Feb. 13, 1996). Once a party's default has been entered, the factual allegations in the complaint, except those concerning damages, are deemed to have been admitted by the non-responding party. *See* Fed. R. Civ. P. 8(b)(6); *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977) (stating the general rule that "upon default[,] the factual allegations of the complaint, except those relating to the amount

3

of damages, will be taken as true"); *see also DirectTV v. Huynh*, 503 F.3d 847, 851 (9th Cir. 2007); *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The court must still "consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 3D § 2688, at 63 (1998) (footnote omitted); *see also Cripps v. Life Ins. Co. of North America*, 980 F.2d 1261, 1267 (9th Cir.1992) ("[N]ecessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default"); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1272 (N.D.Cal.2004) ("[Although] the factual allegations of [the] complaint together with other competent evidence submitted by the moving party are normally taken as true . . . this Court must still review the facts to insure that the Plaintiffs have properly stated claims for relief").

If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the "amount and character" of the relief that should be awarded. 10A Wright, Miller, & Kane, *supra*, § 2688, at 63; *see also Elecktra Entertainment Group Inc. v. Crawford*, 226 F.R.D. 388, 394 (C.D. Cal. 2005) (stating that the district court has "wide latitude" and discretion in determining the amount of damages to award upon default judgment, quoting *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)).

### B. Procedural Requirements

Before a court can enter default judgment against a defendant, the plaintiff must satisfy the procedural requirements for default judgments set forth in Rules 54(c) and 55 of the Federal Rules of Civil Procedure. Rule 54(c) states that "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment." Fed. R. Civ. P. 54(c). Rule 55(a) provides that the clerk must enter default "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a).

The Government has satisfied the procedural requirements for the entry of default judgment. In the Motion, the Government seeks permanent injunctive relief under 26 U.S.C. § 7402(a)—the same relief sought in the complaint. (*Compare* Doc. 1 *with* Doc. 13.) The Government served the

summons and complaint on Dampier Electric by serving the secretary for Jeannette K. Witten, its registered agent for service of process, on October 17, 2019 (Doc. 5), and personally served Dampier on October 26, 2019 (Doc. 4). When Defendants failed to respond or defend, the clerk entered their default as to the complaint. (Docs. 10 & 11.) The Government reports that none of the defendants is an infant or incompetent person, or otherwise exempt under the Servicemembers Civil Relief Act. (Doc. 8.) For these reasons, the court concludes that the Government has satisfied the procedural prerequisites of Rules 54(c) and 55 of the Federal Rules of Civil Procedure. The undersigned therefore turns to the merits of the Motion

### C. The *Eitel* Factors

Granting or denying default judgment is within the court's sound discretion. *Draper v. Coombs*, 792 F.2d 915, 924–25 (9th Cir. 1986); *Aldabe v. Aldabe*, 616 F.2d. 1089, 1092 (9th Cir. 1980). The court is free to consider a variety of factors in exercising its discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986). Among the factors that may be considered by the court are (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel*, 782 F.2d at 1471–72.

#### 1. Possibility of Prejudice to Plaintiff

The first *Eitel* factor considers whether the plaintiff will suffer prejudice if a default judgment is not entered. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. Prejudice may be shown where failure to enter a default judgment would leave plaintiff without a proper remedy. *Landstar Ranger, Inc. v. Parth Enterprises, Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010).

Here, the Government seeks an injunction requiring Defendants to comply with their federal tax obligations. (*See* Docs. 1, 13.) Because Defendants have not responded to the complaint or otherwise appeared, the Government would be left without recourse against them if default judgment were not entered. Given Defendants' alleged failure to comply with mandated tax

obligations, the Government would be prejudiced if denied a remedy against Defendants. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (stating that plaintiffs would have no other recourse if a default judgment were no entered). As a result, the first *Eitel* factor weighs in favor of the entry of default judgment.

### 2. Substantive Merits and Sufficiency of the Claims

The second and third *Eitel* factors are (1) the merits of plaintiff's substantive claim, and (2) the sufficiency of the complaint. *Eitel*, 782 F.2d at 1471–72. The court considers the two factors together given the close relationship between the two inquiries. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1055 (N.D. Cal. 2010). These two factors will favor entry of default judgment where the complaint sufficiently states a claim for relief upon which the plaintiff may recover. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175; *see Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

Title 26 U.S.C. § 7402 authorizes district courts to issue injunctions as necessary to ensure the enforcement of internal revenue laws. *See* 26 U.S.C. § 7402(a); *Ryan v. Bilby*, 764 F.2d 1325, 1327 (9th Cir.1985); *United States v. Ernst & Whinney*, 735 F.2d 1296, 1300 (11th Cir. 1984). Injunctive relief is appropriate if the defendant is reasonably likely to violate the federal tax laws again.[1] *See United States v. Thompson*, 395 F. Supp. 2d 941, 946 (E.D. Cal. 2005) (granting injunctive relief because defendant's past violations of federal tax laws, continuous challenges to the authority of the courts and the federal tax system, and ability to reopen his business after his term of incarceration ended, demonstrated a likelihood of future tax violations by the defendant); *United States v. Stoll*, No. Civ. C 05–0262RSM, 2005 WL 1763617, at *8 (W.D. Wash. June 27, 2005) ("In a statutory injunction action . . . the moving party must demonstrate that the statute has been violated and that 'there is a reasonable likelihood of future violations.'") (quoting *SEC v.*

---

[1] Because section 7402(a) grants the court power to enter injunctive relief, the Government need only show that an injunction is appropriate to enforce the internal revenue laws; it need not make the showing required by the traditional equitable factors. *See United States v. Estate Preservation Service*, 202 F.3d 1093, 1098 (9th Cir. 2000) (holding that the "traditional requirements for equitable relief need not be satisfied" for purposes of § 7408 "since [the statute] expressly authorizes the issuance of an injunction"); *United States. v. Thompson*, 395 F. Supp. 2d 941, 945 (E.D. Cal. 2005) ("Because § 7402(a) grants the court injunctive power, the government need only show that an injunction is appropriate for the enforcement of the internal revenue laws, without reference to the traditional equitable factors" (citations omitted)). *See also U.S. v. Sommerstedt*, 435 F. App'x 695, 696 (9th Cir. 2011) ("[B]ecause the statutory requirements were met, the district court did not abuse its discretion in granting injunctive relief to the United States").

*Holschuh*, 694 F.2d 130, 144 (7th Cir. 1982)); *see also Cummings v. Connell*, 316 F.3d 886, 898 (9th Cir.2003) ("In seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'") (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)).

"In predicting the likelihood of future violations, a court must assess the totality of the circumstances surrounding the defendant and his violations." *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Courts can consider such factors as (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation, and his degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve him in such transaction; (4) the defendant's recognition of his own culpability; and (5) the sincerity of his assurances against future violations. *United States v. Laerdal Mfg. Corp.*, 73 F.3d 852, 854–855 (9th Cir. 1995); *United States v. Harkins*, 355 F. Supp. 2d 1175, 1181 (D. Or. 2004) (citing *United States v. Raymond*, 228 F.3d 804, 813 (7th Cir. 2000)).

Here, the Government has alleged, and Defendants, by their failure to answer, have admitted that there is a likelihood they will commit future tax violations. The Government estimates that Defendants' repeated violations of the internal revenue laws have caused the United States Treasury to lose estimated revenue of more than $805,000; they have also caused the expense of governmental administrative resources by requiring efforts to collect monies owed and obtain required tax returns. (Compl. ¶¶ 24–26.) *Cf. Raymond*, 228 F.3d at 813 (holding that the government had incurred a significant loss as a result of the administrative burden defendant placed on the IRS by causing it to respond to frivolous Freedom of Information Act requests, investigate unlawful tax evasion activities, and engage in collection efforts to obtain unpaid taxes).

The Government has also established that Defendants have knowingly and continuously violated federal tax laws. Defendants' violations date back to 2009; in the intervening period, the IRS has repeatedly attempted to compel their compliance with federal tax laws. (Compl. ¶¶ 24–26.) Despite numerous communications from the IRS, Defendants have persisted in their noncompliance. *See Orantes–Hernandez v. Thornburgh*, 919 F.2d 549, 564 (9th Cir. 1990)

1 ("Permanent injunctive relief is warranted where . . . defendant's past and present misconduct
2 indicates a strong likelihood of future violations" (citations omitted)).

3       Furthermore, the public interest also favors entry of a permanent injunction. Defendants'
4 conduct "encourages willful disregard of internal revenue laws and shakes public confidence in the
5 fairness of the federal income tax system." *United States v. Broaster Kitchen, Inc.*, Case No. CV
6 14–09421 MMM (PJWx), 2015 WL 4545360, at *5 (C.D. Cal. May 27, 2015) (finding that the
7 public interest supported entry of a permanent injunction).

8       Considering the totality of the circumstances surrounding Defendants' violations, it is
9 apparent that an injunction under section 7402(a) is necessary to ensure the enforcement of internal
10 revenue laws. The Government has thus sufficiently stated a claim for a statutory injunction.
11 Accordingly, the second and third *Eitel* factors weigh in favor of entering default judgment against
12 Defendants.

### 3. Sum of Money at Stake in the Action

14       The fourth *Eitel* factor balances "the amount of money at stake in relation to the seriousness
15 of the [defaulting party's] conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176; *see also Eitel*, 782
16 F.2d at 1471–72. This determination requires a comparison of the recovery sought and the nature
17 of the defendant's conduct to determine whether the remedy is appropriate. *See Walters v. Statewide*
18 *Concrete Barrier, Inc.*, No. C-04-2559 JSW (MEJ), 2006 WL 2527776, *4 (N.D. Cal. Aug. 30,
19 2006) ("If the sum of money at issue is reasonably proportionate to the harm caused by the
20 defendant's actions, then default judgment is warranted").

21       As noted, the Government seeks non-monetary relief: a permanent injunction against
22 Defendants. (Compl. ¶¶ 27–35.) The fourth *Eitel* factor—the sum of money at stake in the action—
23 therefore weighs in favor of entry of default judgment. *See, e.g., Broaster Kitchen, Inc.*, 2015 WL
24 4545360, at *6; *United States v. Brekke*, No. CIV 2:12–cv–0722–WBS–JFM, 2012 WL 2450718,
25 *4 (E.D. Cal. June 26, 2012) ("Under the fourth factor cited in *Eitel*, 'the court must consider the
26 amount of money at stake in relation to the seriousness of Defendant's conduct.' Here, plaintiff
27 seeks no monetary damages and accordingly this factor does not weigh against entry of default
28 judgment.") (citation omitted)); *United States v. Tarantino*, No. CIV S-06-0618 GEB EFB, 2007

WL 1521031, *5 (E.D. Cal. May 24, 2007) ("Where, as here, the United States seeks non-monetary relief [under 26 U.S.C. § 7402(a)], this factor weighs in favor of granting default judgment for the United States.") (citing *Crawford*, 226 F.R.D. at 393).

### 4. Possibility of Dispute

The fifth *Eitel* factor considers the possibility that material facts may be in dispute. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. As Defendants have failed to respond to the complaint, and default has been entered against them, the Court accepts the Government's allegations as true. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (Upon entry of default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.") (quoting *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). As a result, there is little possibility of dispute concerning the material facts of this case, and the fifth *Eitel* factor weighs in favor of entering default judgment against Defendants.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether the defendants' default may have been the product of excusable neglect. *See PepsiCo, Inc.*, 238 F. Supp. 2d at 1177; *see also Eitel*, 782 F.2d at 1471–72. This factor gives consideration to due process, ensuring that the defendants are "given notice reasonably calculated to apprise them of the pendency of the action and be afforded opportunity to present their objections before a final judgment is rendered." *Philip Morris USA, Inc. v. CastworldProductions*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).

Here, the possibility of excusable neglect is remote. The Government served Dampier Electric on October 17, 2019. (Doc. 5.) It then served Dampier on October 26, 2019. (Doc. 4). On November 27, 2019, the clerk entered Defendants' default as to the complaint. (Docs. 10 & 11.) Since service was effected, Defendants have neither responded to the complaint nor attempted to have their defaults set aside. Under such circumstances, it does not appear that Defendants' default

was due to excusable neglect. Accordingly, the undersigned finds that this factor weighs in favor of granting default judgment.

### 6. Policy in Favor of Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. The fact that Rule 55(b) has been enacted, however, indicates that "this preference, standing alone, is not dispositive." *PepsiCo, Inc*., 238 F. Supp. 2d at 1177 (quoting *Kloepping*, 1996 WL 75315 at *3). Rule 55(a) allows a court to decide a case before the merits are heard if the defendants fail to appear and defend. *See PepsiCo, Inc*., 238 F. Supp. 2d at 1177 ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible"). Since Defendant's failure to participate in this action has rendered a decision on the merits impossible, the seventh *Eitel* factor does not preclude the entry of default judgment against it.

### 7. Conclusion Regarding the *Eitel* Factors

On balance, the *Eitel* factors support the entry of default judgment against Defendants. Although the policy of deciding cases on the merits always weighs against the entry of default judgment, the Government has alleged a meritorious claim against Defendants, there is no indication of excusable neglect on Defendants' part, and there is little likelihood of dispute. Consequently, the court undersigned recommends that the Government's motion for entry of default judgment against Defendants be granted.

### D. The Character and Amount of Plaintiff's Recovery

As noted, the Government seeks a permanent injunction under 26 U.S.C. § 7402(a). Specifically, it seeks an order (1) enjoining Defendants, individually and doing business under any other names or using any other entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, from failing to pay over to the IRS all employment taxes, including federal income tax withholdings, FICA taxes, and FUTA taxes required by law; enjoining Defendants and their representatives, agents, servants, employees, attorneys, successors in interest and assigns, as well as anyone in active concert or participation with them, from failing to withhold and pay over to the IRS all employment taxes, including federal income and FICA taxes, required by law; (2) requiring Defendants to timely and

accurately file all required federal income tax returns (*i.e.*, Forms 1040, 1120, 1120s, 1065, etc.) with the IRS at such location as the IRS may deem appropriate; (3) requiring Defendants to timely and fully pay all federal income tax liabilities as required by the IRS; (4) requiring Defendants to timely and accurately file all required federal employment tax returns with the IRS at such location as the IRS may deem appropriate; (5) requiring Defendants to deposit withheld federal payroll taxes in an appropriate federal depository bank in accordance with the federal deposit regulations; (6) requiring Defendants to deposit federal employment taxes in an appropriate federal depository bank in accordance with the federal deposit regulations; (7) requiring Defendants to deposit federal unemployment taxes in an appropriate federal depository bank each quarter in accordance with the federal deposit regulations; (8) requiring Defendants to sign and deliver, on the 1st day of each month, an affidavit to the IRS-assigned Revenue Office, or such other person as the IRS may deem appropriate, stating that the requisite withheld federal employment taxes due during the previous month were timely made; (9) requiring Defendants to sign and deliver, on the 1st day of each month, an affidavit to the IRS-assigned Revenue Office, or such other person as the IRS may deem appropriate, stating that Dampier Electric's requisite share of federal employment taxes due during the previous month were timely made; (10) requiring Defendants to sign and deliver, on the 1st day of each month, an affidavit to the IRS-assigned Revenue Office, or such other person as the IRS may deem appropriate, stating that Dampier Electric's requisite federal unemployment taxes due during the previous quarter were timely made; (11) requiring Defendants to timely pay all required outstanding liabilities due on each tax return required to be filed, as described herein; (12) enjoining Defendants from assigning any property or making any disbursements after the date of the injunction until amounts required to be withheld from employee wages after the date of the injunction are paid to the IRS; and (13) requiring Dampier to immediately, and for a periods of five (5) years after the date of the injunction, notify the IRS of his relationship with any current or future business entity which he may currently or in the future own, manage, operate, or work for. (Compl. at 10–12.) The Government also seeks the ability to take post-judgment discovery and asks that the Court retain jurisdiction to ensure Defendants' compliance with the injunction. (*Id.*)

As noted, section 7402 authorizes district courts to issue injunctions as necessary to ensure

the enforcement of the internal revenue laws. *See* 26 U.S.C. § 7402(a); *Ryan*, 764 F.2d at 1327; *Ernst & Whinney*, 735 F.2d at 1300. Here, the undersigned finds that the Government has shown that Defendants have interfered with the enforcement of internal revenue laws for several years and that it is reasonably likely they will violate the federal tax laws again. Accordingly, the undersigned recommends the permanent injunction sought by the Government be entered.[2] *See United States v. Roof Guard Roofing Company, Inc.*, Case No. 17-cv-2592 NC, 2017 WL 6994215, at *4 (N.D. Cal. Dec. 14, 2017) ("The government has demonstrated that Roof Guard and Johnson are currently interfering with internal revenue law enforcement and are reasonably likely to continue, so injunctive relief is appropriate."); *U.S. v. China China Inc.*, No. C-11-2065 EDL, 2011 WL 4404941, at *5 (N.D. Cal. Aug. 31, 2011) ("China has continuously and repeatedly failed to satisfy these obligations. This conduct justifies injunctive relief under section 7402(a)."); *Thompson*, 395 F. Supp. 2d at 946 ("Because of defendant's past violations of federal tax laws, his continuous challenges to the authority of the courts and the entire federal tax system, and his ability to reopen his business after his term of incarceration, a statutory injunction under IRC § 7402(a) is necessary for the enforcement of internal revenue laws.").

## IV. CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that:

1. The Government's motion for entry of default judgment (Doc. 13) be granted.
2. Judgment be entered against Defendant Dampier Electric, Inc. and Defendant Marcus Dampier.
3. A permanent injunction pursuant to 26 U.S.C. § 7402(a) be entered with the following terms:
   a. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and

---

[2] Courts routinely enter permanent injunctions with provisions that are substantially similar as those contained in the Government's proposed injunction. *See, e.g United States v. D & P Prod., Inc.*, No. 2:18-cv-1834 KJM DB, 2019 WL 2443492, at *6 (E.D. Cal. June 12, 2019), *report and recommendation adopted*, No. 2:18-CV-1834 KJM DB, 2019 WL 5091131 (E.D. Cal. Aug. 28, 2019); *Broaster Kitchen, Inc.*, 2015 WL 4545360, at *8; *United States v. Casillas*, No. CV 14–5907 PA(Ex), 2015 WL 627382, at *1–2 (C.D. Cal. Jan. 21, 2015); *United States v. Wickham*, No. 3:10-cv-00087-RRB, 2010 WL 4179599, at *3–4 (D. Alaska Oct. 19, 2010).

their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to timely and accurately file all required federal income tax returns (i.e., Forms 1040, 1120, 1120s, 1065, etc.) with the IRS at such location as the IRS may deem appropriate;

b. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to timely and fully pay all federal income tax liabilities as required by the IRS;

c. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to timely and accurately file all required federal employment tax returns with the IRS at such location as the IRS may deem appropriate;

d. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to deposit withheld federal payroll taxes in an appropriate federal depository bank in accordance with the federal deposit regulations;

e. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to deposit federal employment taxes in an appropriate federal depository bank in accordance with the federal deposit regulations;

f. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to deposit federal unemployment taxes in an appropriate federal depository bank each quarter in accordance with the federal deposit regulations;

g. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required on the 1st day of each month to sign and deliver an affidavit to a designated IRS Revenue Office, or such other person as the IRS may deem appropriate, stating that the requisite withheld federal employment taxes due during the previous month were timely made;

h. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required on the 1st day of each month to sign and deliver an affidavit to the designated IRS Revenue Office, or such other person as the IRS may deem appropriate, stating that Dampier Electric's requisite share of federal employment taxes due during the previous month were timely made;

i. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required on the 1st day of each quarter to sign and deliver an affidavit to the designated IRS Revenue Office, or such other person as the IRS may deem appropriate,

stating that Dampier Electric's requisite federal unemployment taxes due during the previous quarter were timely made;

j. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to timely pay all required outstanding liabilities due on each tax return required to be filed herein;

k. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are prohibited from assigning any property or making any disbursements after the date of the injunction until amounts required to be withheld from employee wages after the date of the injunction are paid to the IRS;

l. Dampier Electric, Inc., and Dampier, individually and doing business under any other name or using any other non-Dampier Electric, Inc., entity, and their representatives, partners, agents, servants, employees, attorneys, and anyone in active concert or participation with them, are required to immediately, and for a periods of five (5) years after the date of the injunction, notify the IRS of their relationship with any current or future business entity which they may currently or in the future own, manage, operate, or work for;

m. The United States may take post-judgment discovery to the same extent that post-judgment discovery is available to a judgment creditor under Fed. R. Civ. P. 69 to investigate and to ensure compliance with this injunction; and

n. The Court shall retain jurisdiction over this case to ensure compliance with this injunction.

4. This case be closed.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **March 19, 2020**        /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE